Good morning, Your Honors, Counsel, and may it please the Court. My name is Robert Gerald Bernhoft, and I am privileged to represent Jerry Marchelletta, Jr. in this appeal of a dismissal of a federal civil rights suit arising from the Northern District of Georgia. This case has a rather lengthy and complex history, with the underpinning criminal case going back to the year 2000. That history was necessarily set forth in the First Amendment complaint, including this Court's reversal of all conviction counts. And then subsequently, on September 12, 2014, the Honorable Judge Batten dismissed with prejudice the remaining retrial counts against Mr. Marchelletta. Mr. Marchelletta timely filed his federal civil rights lawsuit on September 11, 2014. We're actually up on that. Yes, Judge. If you could get to the issues, and particularly what I'd be interested in hearing your explanation of why Kelly v. Curtis doesn't bar your claims against what we'll call the investigative defendants. Yes. The First Amendment complaint was dismissed first on shotgun pleading grounds. Alternatively, the District Court found that after identifying an allegation in the First Amendment, referred to as the fact that the prosecutors knew about a 9131 form, which is a request for grand jury investigation, that, and it's not clear from the decision, that there was an inference drawn against non-movement Marchelletta. Regardless of the decision, I reviewed De Novo, and you alleged, the way I read your complaint, that the prosecutors suppressed the evidence, which requires that they know about it. You can't suppress that which you don't know about. Yes. So, if the prosecutors knew about it, that's the pause in appeal under Kelly v. Curtis for the investigative defendants' claim. Respect to those two documents alone, respecting the immunity agreement for George Gorman, and with respect to the 9131 form, but it is not a logical or a favorable inference to conclude that the thousands of other pages of suppressed documents, which were material, were known to the prosecutors. I don't allege that. You allege the prosecutors suppressed them. Yes. Okay. You can't suppress something that you don't know anything about. Well, this is a, as the court is aware, Bivens violations are functionally, they're concealment and suppression of material evidence in favor of the defendant, that would favor the defendant. Suppression requires that you suppress. Yes. If you don't know about it, you can't suppress it. You allege they suppressed it, therefore, you allege they knew about it. Yes, two documents. Kelly v. Curtis says, no, you allege the Brady claims, Brady violation claims, against all the prosecutors. Yes. On all the documents. We identified two documents in the First Amendment complaint that they knew about. Okay. The only, well, you said that you did not make a Brady claim against the investigative defendants that wasn't also made against the prosecutorial defendants. Yes, Judge Cards. Okay. All right. Let me get to the question because you haven't answered it yet. Yes. If you made all the suppression claims against both categories of defendants, everything that you said the investigators suppressed, you said the prosecutors suppressed, that necessarily alleges the prosecutors knew about it. And under Kelly, that destroys your claim against the investigators. Yes. I respectfully disagree with the court's interpretation of Kelly's application of this case. Here's the direct answer. We have a Brady claim. We cannot be required to plead that which we cannot know. There are three possibilities. But you did plead that the prosecutors suppressed it. You pleaded that. Yes. Whether you knew it or not. Well, we . . . And the court takes your pleadings on their face. Yes. That's what a 12b-6 is. Yes. And so the court took it as given because you pleaded it and they had to take it as accurate that the prosecutors suppressed and therefore knew about that evidence. Yes. Respecting the two documents, Your Honor. That's the fairest reading of the complaint. No. Why do we keep doing this? You've already told me that you made no Brady claims against the investigative defendants that you didn't make against the prosecutorial defendants. It's a mixed liability claim, Your Honor. There's three possibilities. The special agents could have given none of the disclosable documents to the prosecutors. They could have given all of them to the prosecutors, which is their defense under qualified immunity. They're not liable under Brady if they disclose all the documents to the prosecutors. Or it could be a mixed situation where the agents disclosed some of the documents and not all of the documents. It could have been until you pleaded that the prosecutors suppressed all of the documents. Well, what we said is the prosecutors did not disclose any of these documents to the defendants. That's the question of knowledge. Alleged. I've read your complaint that they suppressed the documents. Yes. They did not disclose any of these documents. Okay. Then you've pleaded that they knew about all the documents. Two of the documents. No. You pleaded that they suppressed all the documents. You didn't make a claim against the investigators that you didn't make against the prosecutors in regard to suppression of evidence. We did that under a mixed liability. We cannot plead what we cannot know. There's no question that discovery bodies were buried. Who did look out? Who picked up the shovel? We can't plead that. You could have pleaded it in the alternative, but you didn't do that until you lost the way you pleaded it in the non-alternative, and then you came back and tried to amend after judgment to plead it in the alternative, and we've said you can't do that. Well, the Rule 59E and the proposed Second Amendment Complaint to the Peace Act, we were responding in good faith, trying to meet the district court concerns over the shotgun pleading allegation and those issues, and if you look at the authorities in this circuit regarding the 59E, Rule 15 applies, Foman v. Davis, and amendments should be granted freely when justice requires. This is an important, meritorious federal civil rights suit, and the decision not to allow the filing of the Second Amendment Complaint cannot be sustained. I would point out that the cases relied upon by the district court in finding undue delay and bad faith, we cannot locate any reported decisions where, on this procedural posture at the pre-answer motion to dismiss pleading phase, where either bad faith or undue delay has been applied, evergreen, complex multi-district litigation, 28 complaints filed around the country in the late 90s. Five years later, after they lose on summary judgment, they try and amend. That was an example of pleading seriatim, tactical, bad faith. Addington was post-discovery, post-summary judgment when there's prejudice to the defendants. They conduct discovery, they spend lots of time and money, they develop their defenses, and then after summary judgment is granted, then somebody tries to come in and amend a complaint. The Peel v. Tobacco Company, that was a motion for leave to file a Second Amendment Complaint. The court imposed a deadline to do so, and there were five months after the deadline. That appears to be undue delay. Andrick's Pharmacies, three years after the original complaint was filed and only in response to a favorable decision for the defendants on a motion for judgment on the pleadings, and Maynard was post-discovery and post-summary judgment. Why didn't you plead it in the alternative in the first complaint? There were a number of experienced litigators who looked at that First Amendment Complaint, Your Honor. We did not detect any defects in it. That's not my question. Yes. How many people looked at it? That's not my question. Yes. My question is, why didn't everybody pleads in the alternative? Yes. It's a regular practice. Why didn't you plead this in the alternative? Because we felt that there were so numerous good-faith interpretations of the set of facts that to plead in the double and triple alternative regarding who knew what about the documents vis-a-vis the agents... It wouldn't have been double and triple. We would have had to... The prosecutorial defendants didn't know. The investigative defendants suppressed it. Count next. The prosecutorial defendants knew it. That's it. We felt that would weaken the thrust of our complaint by pleading in multiple alternatives. You mean the district court says, I'm going to hold it against them, they pleaded alternative theories? He couldn't hold it against them. The district court held this against us in the Peace Act when the court held that because there was one factual change and one allegation regarding prosecutorial knowledge that that So I think our concerns were well-grounded. After each other. Evergreen, for example, says, and rejected an attempt to establish, that's Addington. Evergreen says, we don't count the old sporting theory of justice or the use of the federal courts as a forum for testing alternate legal theories seriatim. Yes, in 28 different districts. If you had three alternatives, what the courts don't put up with is you put one in a complaint, you get it dismissed. You put the second one in an amended complaint, you get it dismissed. And then later on down the road, you put the third one in an amended complaint, a second amended complaint, and get it dismissed. You've got to put them in one complaint. Your Honor, respectfully, we did not read our first amended complaint that way. We made strategic decisions in good faith to plead a meritorious civil rights suit. I appreciate the court's concerns about multiple pleadings in the alternatives. We met the district court's concerns in good faith in the Peace Act. There was no undue delay. There was no bad faith. If the court is concerned about the legal sufficiency of the first amended complaint, then we believe the district court misapprehended the legal standards regarding accepting a proposed second amended complaint on a 59E at the pleading stage. And we respectfully request the court reverse the remand for further proceedings. Okay. Thank you. You've got your full five minutes to reply. We'll hear now from Mr. Mendel. Thank you, Your Honor. Good morning. May it please the court. My name is Gabriel Mendel. I'm here on behalf of the prosecutors and the law enforcement agents who are appellees in this case. The district court's orders in this case should be affirmed for numerous independent reasons. The plaintiff's first amended complaint was properly dismissed as an impermissible shotgun pleading, failed to comply with Twombly and Iqbal, and failed to overcome the vital, absolute, and qualified immunities that attach to these defendants. I think it's important for the panel to keep in mind, as the district court had to do in this case, what is actually pled in the complaint, as opposed to the rhetoric found in plaintiff's brief. Are you talking about the complaint or the amended complaint, or proposed amended complaint? The first amended complaint, Your Honor. I'd like to turn first to the deficiencies. As opposed to the second one, I understand. Yes, Your Honor. Because what remains on this appeal is actually quite narrow. There's really only two claims to which the plaintiff has attributed any legal error. One against the prosecutors, one against the law enforcement agents. With respect to the prosecutors, it's this alleged alteration of a customs report that was produced in pretrial discovery. With respect to the law enforcement agents, it's the broader failure to disclose Brady evidence. The plaintiff has abandoned his appeal over all other claims, and his reply brief doesn't take issue with that. I thought he was appealing the non-composite issue against the prosecutors on a suppression theory. He was appealing the dismissal of that, or at least the failure to permit him to amend that. Am I wrong? I think that's correct, Your Honor. I don't know how . . . there's a number of different characterizations of this issue. It's sometimes called an alteration, a composite, a forgery, but this is a great point for the court to actually look at the complaint, because it's paragraph 23, and all he actually alleges is he received authentic pages from two different reports in pretrial discovery, but didn't receive the entire copy of either report from which they're drawn. And it was made to appear as though it was one report. That's the allegation, yes, Your Honor. There's no allegation that the original documents were destroyed. They existed. They were later produced in a FOIA request. So all this is is an allegation of the partial withholding of Brady material, which puts this factual allegation squarely within prosecutorial immunity, going back to the Supreme Court's unanimous decision in Embler. And their conclusory labels of alteration or fabrication, in addition to being unsupported by any factual allegations, are not controlling. In Jones v. Cannon, this court made clear that it's whether the activities occur in the role as an advocate, which these undeniably did. More fundamentally, plaintiff just has a Twombly and Iqbal problem here, because all he alleges about the prosecutors is found in paragraph 81 of the complaint, where he states that they, quote, coordinated, strategized, and assisted in the manufacture of this document. And as the district court properly found, this is the type of vague conclusory allegation which is insufficient to state a constitutional violation against these three prosecutors, one of whom only joined the team three weeks before trial. In addition to absolute immunity and Twombly and Iqbal, the prosecutors are still protected by qualified immunity as well. And in their brief, plaintiff really takes no issue with this. There's a footnote that, quote, acknowledges that qualified immunity may be a different matter, but there's no effort to overcome that immunity, which is a separate and independent bar to their claims. Ultimately, all plaintiff is trying to do is to circumvent the well-established immunity for prosecutors for failing to disclose Brady material. And you can imagine the consequences if prosecutors could be subject to personal liability suit years after the fact for failing to disclose a single document out of 35,000 pages during criminal discovery. This is exactly the type of situation absolute immunity was created to prevent. Turning to the law enforcement agents, they had absolute immunity for many of the waived claims with respect to the sole remaining claim. As the panel has already noted, to state a Brady claim against law enforcement requires allegations of intentional concealment from the prosecutors because the Brady obligation ultimately rests with the prosecutors. So to state a claim against the agents, they needed to allege the agents had the documents and intentionally conceal them from the prosecutors. Judge Carnes, as you've already identified in your questions, nowhere in the complaint do they allege this. Instead, they allege the opposite. Every single allegation of the withholding of Brady materials is made against, quote, all of the defendants or the, quote, prosecution team. And therefore, there is no allegation anywhere in the complaint of intentional concealment. Now, in their brief, they falsely assert that their complaint is silent as to whether any of the individual prosecutors knew. It's the same effort they've attempted at argument today, and it's just wrong for the reasons the district court has identified. Instead, he offers this extraordinary argument that the district court had to construe an allegation that all of the defendants knew to instead be an allegation that only the law enforcement agents knew and the prosecutors had no knowledge at all. This is absurd. The district court could not construe these allegations to mean the opposite of what they've alleged. The court asked the plaintiff numerous times during this argument, why didn't you plead in the alternative? There's a simple answer for that, Your Honor. They don't have any facts to support any of their theories, let alone alternative theories, because you find here not a single factual allegation that would support. Well, they attempted to plead in the alternative after judgment. They attempted to plead the alternative, that is, the prosecutors didn't know after judgment, did they not? They did, Your Honor, but for the reasons we've stated, we stated in our motion, in our brief, that was a futile effort because the prosecutor's knowledge is a defense for the law enforcement agents, but that issue is not enough for them to state the elements of the claim, which is concealment and that that concealment is intentional and knowing. So even if the district court gave them this favorable reading that they now claim and that these allegations are construed to just allege that only the law enforcement agents knew about these materials, it's still not enough because you have to allege that they knowingly concealed them from the prosecutors and nowhere in the 50-plus pages in this complaint will you find a single fact that would support such an allegation. Finally, I'd like to move to the motion to amend. The district court did not abuse its discretion in denying this motion. There's some dispute between the parties about what standard applies to a post-judgment motion to amend. We filed a notice of supplemental authority for a decision from this court back in January, a case involving the exact procedural posture we have here, where the plaintiff had attempted post-judgment to file a motion to amend. This was David Johnson Construction Company versus Cleary Consulting. And the trial court in that case, even though it was a motion for leave to amend, applied the Rule 59E standard, not just Rule 15A. Yeah, but your problem is there's a pre-split Fifth Circuit case, Desoy, that goes the other way. Your Honor, it appears there may be abundant Eleventh Circuit precedent on both sides. You picked the earliest, and that's the earliest one I've found. Fair enough, Your Honor. We don't think that's correct. We think Rule 59E applies. I do too, but it's binding precedent. We have to follow incorrect binding precedent as well as correct binding precedent. Fair enough, Your Honor. In this case, the district court did proceed and did apply Rule 15A, so we have abundant reason under that standard why the motion to amend was denied. In this case, there were two independent reasons. There's the good faith, and there's the undue delay. Turning to the undue delay, first, this Court has routinely upheld district courts found they do not abuse their discretion when they deny an effort with no good cause shown to file another amended complaint, in this case, 18 months after the action was initiated. Not just 18 months later, but after the district court had decided a thoroughly brief dispositive motion, over 400 pages of briefing at the district court level. Plaintiff's own complaint alleges he's been in possession of all the evidence, all the information he needed since 2011, files his complaint in 2014, and then waits 18 months without any cause shown to try again. The district court didn't abuse its discretion, finding there was no cause for this undue delay. Plaintiff's bad faith is an independent sufficient basis for denial as well. Again, there's been no allegation of any discovery of additional facts, and yet plaintiffs reverse multiple factual theories, not just a single fact as they continue to claim. Multiple factual theories to circumvent the district court's reasoned order. Our brief cites the two most egregious examples. The first, as the panel has already identified, is the claim in the first amended complaint that the prosecutors were aware of all of the Brady material, which magically transforms to the opposite allegation in the second amended complaint, that the prosecutors did or didn't know. We don't have an allegation one way or the other. They may not have known. That's not enough. It's still futile for the reasons we identified, but it also shows bad faith. Perhaps more egregious is the allegation in the first complaint that three federal prosecutors knew about an FBI informant's status and lied to the district court about it, which, in turn, they transform in their new proposed complaint to be an allegation that, actually, the FBI agent concealed that from the prosecutors, which presumably means that these prosecutors did not, in fact, lie in open court to a district judge. The district court properly found bad faith in these efforts. Now, plaintiff's reply brief, like his argument today, tries to equate this to the pleading of alternative theories under Rule 8, which, first of all, is not what they did, but even that analogy is defective for— They knew about it and lied in open court. They didn't know about it and didn't lie in open court. The investigators lied to them. Sounds alternative to me. They didn't plead that in a single complaint, which is what Rule 8 allows you to do. What Rule 8 does not allow you to do is what they've done here. Well, that doesn't mean they're not alternative theories. You're just saying they're alternative theories brought forward in alternative complaints. Correct, Your Honor. And so what they argue in their reply brief is, isn't that effectively the same thing as what Rule 8 allows? And what I'm positing is that, no, it's not, and there's at least two good reasons. First, they don't attempt to plead alternative theories. What they attempt to plead are diametrically contradictory facts, and they're the essential elements of the claim, and they're not supported either way by any factual allegation. Diametrically opposed versions of the facts are an example of alternative theories. We don't know. He either knew A. It was either A or not A. We win either way. Count 1, it was A. Count 2, it was not A. Correct, Your Honor. But pleading alternatively like that in a single complaint is different both in intent and effect from what they've done here. Well, you get back to single complaint, but what I'm questioning, and maybe it's an academic matter, is you keep saying you can't plead that. Yes, you can plead it in a single complaint. If you have facts to support either one, our position is they aren't— Well, if you plead facts. Correct, Your Honor. We don't think they—I guess I'm going back to the court's point, or the question which I understood to be, for example, if the allegations in the First Amendment complaint and the Second Amendment complaint had both been in the same complaint, would that avoid the problem? And the answer is no. They're still subject to dismissal for all the other reasons. Well, it would have avoided the problem you argue in the district court found of bad faith. Yes, they wouldn't have a Second Amendment complaint. It would have all been dismissed in the first place, Your Honor. That is correct. And for the reasons we identify in our futility argument, the Second Amendment complaint still has all the same defects. But the cases cited by the panel in plaintiff's argument make clear it is not the same thing to plead them in one complaint versus filing one complaint, litigating it to the hilt, 400 pages, years of briefing, waiting until the district court disposes of it in a 40-plus page reasoned opinion, and then saying, we actually meant to plead all the things that would get around that decision. That goes both to the undue delay and the bad faith. The district court did not have used its discretion in denying that effort. And for these reasons and those articulated in our brief, we ask that the district court orders be affirmed. Thank you, Your Honor. Thank you. Mr. Bernhoff, five minutes. Thank you, Judge. My learned friend, Mr. Mendel, continues to assert on briefing and oral argument that an intentional concealment by the special agents from the prosecutors is a required pleading element, and it's not. The Eleventh Circuit has never articulated the precise elements that must be pled at the pleading stage. If you look at the Seventh Circuit's decision to extend a Brady-viable Bivens class of action, Engle v. Buchan, Judge Sykes, highly respected jurist, we rely upon that for this court to allow a Brady claim in this jurisdiction. And if you look at, as we pointed out in a footnote in our briefing, the plaintiff in Engle did not plead any intentional concealment, and that wasn't defective according to the Seventh Circuit's decision. What these defendant-appellees are attempting to do, it's the old prove it at the pleading stage. We are not required to plead that our version of events is more likely than not. We're required to plead plausibility. Speaking of bad faith and egregiousness, this is a meritorious civil rights case, and what's egregious is the fraud that was perpetrated on Marshaletta and his company. It's been going on for a long time. I appreciate the advocacy from my learned friend, Mr. Mendel, but continuing to insist that there's a pleading element required, or it's 12B6 dismissible, is not a sound argument. You have asked us, as the Eleventh Circuit, to expand the Bivens claim, as the Seventh Circuit has done, to include the Brady violation. Yes, Your Honor. Okay. So in this case, you can't allege, one of the elements of Brady is you have to allege that prejudice had ensued. Yes. But here, because the convictions were vacated, how can you allege prejudice? Yes. Marshaletta was prejudiced in his defense. Brady violations are almost never detected. Most often, they are detected after cases are concluded. Well, prejudice in the defense doesn't count. It has to show reasonable probability of a different result to be a valid Brady claim. Yes. It's called materiality, but it has to be a reasonable probability of a different result. He got acquitted, exonerated, as you put it, and I think that's a fair statement. Ultimately, and such was the case in Engle v. Bucket. The Court didn't have a problem deciding the materiality prejudice issue. Marshaletta was prejudiced with 11, 12 years of litigation, and he has to go through that to get vindicated and exonerated. Your argument, which I guess is fairly persuasive, is the reasonable probability of a different result would have been acquittal at the jury stage as opposed to later. Yes, Your Honor, and Marshaletta had to invest significant resources to unearth these documents. But you know, when you say, and I appreciate the argument, you ought to extend Brady the way the Seventh Circuit had, and that's your position here. Yes, Judge. We can't extend something in the face of a qualified immunity argument. Yes. No. No, you cannot. Okay. The prosecutors don't have qualified immunity for failure to provide those documents to the prosecutors. The special agents do not. I'm sorry. Anytime you ask us to extend existing law to cover the defendants you've sued . . . Yes. . . . who are officer or official defendants, you lose on qualified immunity ground because the law has to be clearly established at the time they acted. And if it was clearly established at the time they acted, there's no need to extend it. That's just . . . that is hornbook, hornbook qualified immunity law. Brady's suppression has been on the books since 1964 in all of the circuits. It is clearly established that prosecutors . . . I don't know why we're having this problem. I ask you a question and you start off somewhere else, and maybe it's my fault. I'll admit just as likely my fault as yours. Let me clarify. You have asked us to extend existing Eleventh Circuit law to cover this situation. Qualified immunity protects officers against extensions of the law . . . Yes. . . . after they act. Therefore, your argument loses. Now, what's wrong with that syllogism? Your Honor, is then Bivens could never recognize additional claims that were never recognized in the incepting circuit. My point is that . . . Of course they could because what the Supreme Court has said is go ahead and hold that this is a violation of the Constitution and that Bivens covers it, but these defendants don't get held liable. Future defendants will. That's the two-step process. The question as to whether it's a clearly established right that was violated of which a reasonable officer would know is different from the question of what remedy will redress it. Those are two completely different questions. But if the officer has qualified immunity, there is no remedy that can be . . . Special agents don't have qualified immunity regarding Brady suppressions anywhere in any of the 13 circuits. If you sue them in their individual capacity, they do. I respectfully disagree, Your Honor. Those are two separate questions. Federal officers have less protection from civil suit than state officers do? No, they have the same protections and more immunities than 1983 defendants. That's what the case law says. Could I briefly address the lay, Your Honor? Two minutes. Just need one minute. Thank you. All right, one minute. This idea that years have passed by before we filed our Peace Act is simply unsustainable. We consented to very lengthy extensions for these defendants, at least to file their paperwork. We know district court judges are busy, and these decisions took seven or eight months to render and to suggest that . . . Which paperwork are you talking about for them to file? All of their consolidated motions to dismiss. We had numerous . . . He's talking about the delay after the motions to dismiss, isn't he? He's talking about 18 months. The case wasn't on the docket that long. How long was there between the dismissal of the second amended complaint and . . . I'm sorry, first amended complaint and the filing of the second? Well, we filed it within the time limits of 59E. It was filed very shortly after the court's order. I misunderstood his argument there. I think I understood it, and it's incorrect, and it's wrong. Okay. I thank you, Your Honor, for your consideration. Thank you. Appreciate the argument, counsel.